UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KNUDSEN & SONS, INC., | ) | |
| 1 Strawberry Lane, | ) | CASE NO. _____ |
| Orrville, Ohio 44667 | ) | |
| Plaintiff, | ) | JUDGE _____ |
| | ) | |
| v. | ) | **VERIFIED COMPLAINT FOR FALSE** |
| | ) | **ADVERTISING UNDER** |
| FLORIDA BOTTLING, INC., | ) | **THE LANHAM ACT AND** |
| 1035 Northwest Twenty First Terrace, | ) | **DECEPTIVE TRADE PRACTICES** |
| Miami, Florida 33127 | ) | **UNDER THE OHIO TRADE** |
| | ) | **PRACTICES ACT AND OHIO** |
| Defendant. | ) | **COMMON LAW** |
| | ) | |

Plaintiff Knudsen & Sons, Inc. ("Knudsen"), for its Verified Complaint against Defendant Florida Bottling, Inc. ("Defendant"), hereby states and alleges the following:

## NATURE OF THE CASE

1.      This is an unfair competition action to halt Defendant's campaign of flaunting the requirements for labeling and advertising beverages by deliberately making unlawful false and misleading claims across its portfolio of juice products.  Defendant positions the over 100 products in its lineup with a multitude of health-related benefits promoting the portfolio of products as a veritable fountain of youth that will, depending on the product, prevent diseases such as cold, flu, and gout, enhance the immune system, support digestion, and maintain normal blood glucose and cholesterol, while providing eight of the United States Department of Agriculture ("USDA") recommended fruit and vegetable servings in every 32 ounce bottle.  The problem is that most of these claims are either blatantly untrue, lacking in support for the claimed benefit, or illegal disease claims that cannot be made for beverage products.

2.      Defendant has exhibited its disregard for complying with long established statutory and regulatory requirements for limiting labeling and advertising claims to those that are truthful, not misleading, and made in accordance with the relevant requirements of the U.S. Food and Drug Administration ("FDA") and the Federal Trade Commission ("FTC"). Defendant's troubling disregard for complying with basic advertising and labeling requirements results in consumer deception by portraying the products in its portfolio as having nearly mystical properties that will confer amazing health benefits that are not supported by the underlying data and are not properly substantiated.

3.      Defendant continues to engage in this systematic pattern of deception despite being asked by FDA in 2010 to reform its use of misleading and illegal disease claims in the marketing of its products.  Defendant's campaign of deception is calculated to influence consumer behavior and to seize market share from companies that comply with the rules such as Knudsen.  Defendant's false and misleading advertising is causing irreparable injury to Knudsen's goodwill in its own competitive products as well as monetary loss, as this law-abiding company continues to lose market share and sales to a company engaged in false and misleading practices.

4.      Knudsen therefore seeks preliminary and permanent injunctive relief to halt Defendant's campaign of deception and the consequent lost revenue and other injuries these practices are conferring on those companies, including Knudsen, that play by the rules.

## PARTIES

5.     Knudsen is a manufacturer and seller of quality natural and organic branded foods and beverages.  Knudsen is organized and existing under the laws of the State of Ohio, with its principal place of business in Orrville, Ohio.  Knudsen is a wholly owned subsidiary of Smucker Natural Foods, Inc. ("SNF").  SNF in turn is a wholly owned subsidiary of The J. M. Smucker Company ("Smucker"), also an Ohio company.

6.     Knudsen produces R.W. Knudsen Family® branded products, including numerous natural juice and juice blend beverages, such as Simply Nutritious® and Just Juice® products.

7.     Upon information and belief, Defendant Florida Bottling, Inc. is a corporation existing under the laws of the State of Florida, with its principal offices located at 1035 Northwest Twenty First Terrace, Miami, Florida 33127.

8.     Upon information and belief, Defendant produces products under the brand name Lakewood, or Lakewood Organic & Premium Juices ("Lakewood"). Lakewood offers and advertises organic and so-called "premium" juice and juice blend beverages ("Lakewood Juice Products").

## JURISDICTION AND VENUE

9.     This action arises under the laws of the United States, 15 U.S.C. § 1125(a), and under the statutory law of the State of Ohio, Ohio Rev. Code § 4165, and under common law of the State of Ohio.

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act).

11.     This Court has supplemental jurisdiction over Knudsen's related state law claims pursuant to 28 U.S.C. § 1367(a).

12.     Defendant is subject to this Court's personal jurisdiction because it transacts business within the State of Ohio and this District; contracts to supply goods in the State of Ohio and this District; and has committed the complained of acts specified herein within the State of Ohio and this District.

13.     According to the Store Locator available on Lakewood's website, www.lakewoodjuices.com, Lakewood Juice Products are sold at over forty locations within twenty miles of the 44113 zip code, including Whole Foods and Giant Eagle locations.

14.     Venue is proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District and because the Court has personal jurisdiction over Defendant in this District.

## FACTS & ALLEGATIONS

### A.  Knudsen's History and Juice Products

15.     Knudsen is a leading manufacturer and marketer of beverage products in North America, including over 100 types of natural and organic fruit and vegetable juices and juice blend beverages.

16.     Knudsen's fruit juices and juice blend beverages are shelf-stable products that are available at various retail outlets that sell premium juice products.  Knudsen competes with other companies that adhere to the statutory and regulatory requirements and with Defendant, which tries to take advantage of false and misleading advertising practices in order to confer upon itself a competitive advantage to the detriment of consumers.

17.     Knudsen's juice products are sold under the R.W. Knudsen Family® brand.  They are advertised online at www.rwknudsenfamily.com ("the R.W. Knudsen Family website") and sold in retail stores. As the R.W. Knudsen Family website describes: "Since 1961, the R.W. Knudsen Family has been committed to developing delicious, high quality juices. Acquired in 1984 by The J. M. Smucker Company, the brand now offers more than 125 types of beverages."

18.     Consumers can use the Store Locator available on the R.W. Knudsen Family website to identify where to buy Knudsen's juice products.

19.     The juice products of both Knudsen and Lakewood are sold at Giant Eagle and Whole Foods supermarkets in Ohio, among other stores across the United States.   Upon information and belief, at least two Whole Foods Markets within twenty miles of zip code 44113 sell juice products of both Knudsen and Lakewood: 13998 Cedar Rd., University Heights, OH; and 24601 Chagrin Blvd., Beachwood, OH.   When the search is expanded to include Giant Eagle, upon information and belief, there are multiple stores within twenty miles of zip code 44113 that sell juice products of both Knudsen and Lakewood: 6300 Biddulph Road, Brooklyn, OH; 11501 Buckeye Road, Cleveland, OH; 15325 Edgecliff Avenue, Cleveland, OH; 14100 Detroit Avenue, Lakewood, OH; 5744 Transportation Boulevard, Garfield Heights, OH; 22160 Center Ridge Road, Rocky River, OH; 14650 Snow Road, Brook Park, OH; 21593 Lorain Road, Fairview Park, OH; 24601 Chagrin Boulevard, Beachwood, OH; 4401 Mayfield Road, South Euclid, OH; 900 Northfield Road, Bedford, OH; 50 West Bridge Street, Berea, OH; 25105 Cedar Road, Lyndhurst, OH; 6259 Mayfield Road, Mayfield Heights, OH; 6000 Royalton Road, North Royalton, OH; 30275 Detroit Road, Westlake, OH; 27264 Lorain Road, North Olmstead, OH; 7400 Broadview Road, Parma, OH; 290 East Aurora Road, Northfield Center, OH; 34310 Aurora Road, Solon, OH; 27505 Chardon Road, Willoughby Hills, OH; 31990 Walker Road,

Avon Lake, OH; 3440 Center Road, Brunswick, OH; 34325 Center Ridge Road, North Ridgeville, OH; 8960 Darrow Road, Twinsburg, OH; 4428 Broadview Road, West Richfield, OH; 36475 Euclid Avenue, Willoughby, OH; and 30320 Lakeshore Boulevard, Willowick, OH.

**B.  Lakewood Juice Products**

20.    Defendant sells and advertises over one hundred organic and purported "premium" juice and juice blend beverages under the Lakewood brand.

21.    Lakewood Juice Products are sold and advertised in stores and online at www.lakewoodjuices.com ("the Lakewood website"), www.lakewoodorganicjuice.com, and www.Amazon.com.

22.    Lakewood Juice Products are also advertised on the Lakewood® Organic Cold Pressed Facebook page, www.facebook.com/lakewoodjuices.

23.    Defendant divides its over one hundred Lakewood Juice Products into eleven categories on the Lakewood website: Organic Variety Packs & Gift Boxes; Organic Basics; Organic Pure Juices; Organic Blends; Organic Pure Fruit/Smart & Healthy Blends; Organic Concentrate Juices; Organic Culinary Juices; Organic Aloe & Noni Juices; Premium Juices; Biodynamic Organic; and Organic Single Serves 12.5oz.

**C.  Defendant's False and Misleading Advertising**

24.    Defendant makes false advertising claims promoting purported health attributes on the Lakewood website and on Lakewood Juice Products labels.  True and correct copies of printouts from Lakewood's webpage are attached hereto as Exhibit A; true and correct copies of Lakewood Juice Product labels are attached hereto as Exhibit B. These false advertisements are intended to entice consumers and thereby induce them to buy Lakewood Juice Products under

the false pretense that Lakewood Juice Products provide numerous advertised, sought-after health benefits, when in fact, they do not.

        **a.**    **Defendant Continues to Position Several Juice Products with False and Misleading Disease Claims Despite FDA's Objection to the Use of Disease Claims.**

25.      In 2010, FDA issued a Warning Letter to Defendant objecting to the claim on the Lakewood Tart Cherry label and webpage that the product helps "Reduce the pain of … gout," because this disease claim promoted the beverage as an unapproved new drug.  FDA Warning Letter to Florida Bottling, Inc., July 8, 2010, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/uem220572.html.   Since then, FDA repeated its position that "gout" is a disease claim in Warning Letters issued in 2012, 2013, 2014, and 2015.  *See, e.g.*, FDA Warning Letter to Juve International, LLC, April 2, 2013 (objecting to claims regarding relief of gout); FDA Warning letter to Michelle's Miracle, Inc., June 8, 2012 (objecting to claims regarding relief of gout and minor joint pain); FDA Warning Letter to Bio-Recovery Inc., April 1, 2014, (objecting to "gout" as an unapproved new drug claim); FDA Warning Letter to Better Health Lab, Inc., Feb. 18, 2015 (objecting to claims for ALKAZONE® Gout Reliever, including "deposits of uric acid that look like lumps under the skin").

26.      Despite this very clear direction from FDA to cease representing products for treating gout, Defendant continues to flaunt the FDA requirements and position the 32 oz. "Organic Black Cherry PURE" for preventing gout.  Specifically, the Lakewood website states: "maintain healthy levels of uric acid (contributor of gout)."  The parenthetical "(contributor of gout)" evidences that Defendant is representing the product for use in preventing the disease condition, gout.

27.     Undeterred by the FDA reprimand for making unlawful disease claims, Defendant has expanded other disease claims for its products.  Defendant makes false or misleading statements by claiming on the Lakewood website and/or on Lakewood Juice Products labels that its products will help "relieve cold and flu symptoms," and it has advertised that its products "protect against infection."  FDA consistently has objected to claims regarding "infection" and "cold and flu" as disease claims that may not lawfully appear on beverage products. *See, e.g.*, FDA Warning Letter to VitaSea Products Int'l, Feb. 25, 2016; FDA Warning Letter to AMS Health Sciences, July 25, 2014; FDA Warning Letter to DreamLife, LLC, Dec. 1, 2011; and FDA Warning Letter to Supplementality LLC, Feb. 11, 2013.

28.     Statements about "infection," "gout," or "cold and flu" entice consumers into buying Lakewood Juice Products under the false pretense that the products will, similar to drugs, mitigate, treat, or prevent these diseases. However, Defendant's "protect against infection," "gout," and "cold and flu" claims unlawfully advertise as preventing disease Lakewood Juice Products that have not been approved as drugs. These claims violate applicable regulatory standards that prohibit beverage products from bearing a claim that a product can be used in the diagnosis, mitigation, treatment, or prevention of disease.  *See* 21 C.F.R. § 101.93(g)(2) and (g)(2)(viii).  Disease claims subject products to the premarket approval requirements for new drugs.  *See* 21 U.S.C. §355.

29.     Specifically, Defendant makes a false or misleading disease claim by advertising that the 32 oz. "Organic Fruit & Garden Summer Gold" juice helps "protect against infection;" and the 32 oz. "Organic Super Veggie" and 32 oz. "Organic Super Veggie Low Sodium" juices will "protect against infections." Defendant makes a false or misleading disease claim by advertising that the 32 oz. "Organic Lemon-Ginger Echinacea" juice will help "reduce

inflammation and relieve cold and flu symptoms."  Claims that a product has an effect on the "characteristic signs or symptoms of a specific disease or class of disease" are disease claims that cannot be made for beverages.  *See* 21 C.F.R. § 101.93(g)(2)(ii).

30.     The Lakewood website also contains numerous testimonials that promote the use of various products for disease conditions. Its testimonial from "Alida" reads, in part: "I love and appreciate your Tart Cherry juice. I want you to know that I have Gout and whenever I have a 'flare-up,' all I have to do is drink half a glass of your Tart Cherry juice and my pain is completely gone within 30-45 mins. Thank you for making a healthy and tasty product that I can use rather than some chemical or drug that can cause actual damage to me later." True and correct copies of Lakewood website printouts of Testimonials are attached hereto as Exhibit C. Lakewood's testimonial from "Jeff Andros" reads, in part: "For the past 10+ years I have suffered from gout attacks. I was shopping . . . when I noticed your Organic Pure Tart Cherry juice and having read about how helpful cherry juice might be for a gout attack, I decided to give it a try. I am so happy to say that I haven't had a gout attack." (Exhibit C).  The Lakewood website additionally includes a testimonial from "Angelia Moss" which reads, in part: "I have been drinking Pure Dark Cherry Juice for 3 weeks now, my Gout is gone and my blood pressure is within normal range. I never thought juice would be so beneficial." (Exhibit C).  The Lakewood website further includes a testimonial from "Anetta Gillespie" which reads, in part: "My daughter has medical issues and had a liver transplant two years ago and this has helped her overall health! We are so grateful to have found these products!! I buy the organic type of black cherry, tart cherry, and blueberry juices. Thank you again and really enjoying the benefits!" (Exhibit C).

31.     Defendant makes a false or misleading disease claim by advertising that cranberries, "[b]esides helping prevent UTI's . . . ha[ve] other great benefits."    Upon information and belief, Defendant uses "UTI" as an acronym for urinary tract infection.  Because this claim appears on the Lakewood® Organic Cold Pressed Facebook page, it implies that the Lakewood Juice Products containing cranberries provide this health benefit. This claim violates applicable regulatory standards that prohibit beverage products from bearing a claim that a product can be used in the diagnosis, mitigation, treatment, or prevention of disease.  *See* 21 C.F.R. § 101.93(g)(2) and (g)(2)(viii).



32.     Defendant makes a false or misleading disease claim by advertising that "Ginger has antioxidant properties and it's known to . . . alleviate arthritis pain." Because this claim appears on the Lakewood® Organic Cold Pressed Facebook page, it implies that the Lakewood Juice Products containing ginger provide this health benefit. This claim violates applicable regulatory standards that prohibit beverage products from bearing a claim that a product can be used in the diagnosis, mitigation, treatment, or prevention of disease.



33.     Defendant makes a false or misleading disease claim by advertising: "Why Drink Aloe?" followed by numerous answers, including "Anti-Inflammatory."  Because this claim appears on the Lakewood® Organic Cold Pressed Facebook page, it implies that the Lakewood Juice Products containing aloe provide this health benefit. This advertisement suggests that any Lakewood Juice Products containing aloe provide this health benefit. This claim violates applicable regulatory standards that prohibit beverage products from bearing a claim that a product can be used in the diagnosis, mitigation, treatment, or prevention of disease.



34.     Statements regarding the use of the Lakewood Juice Products in treating gout, preventing inflammation, preventing infection, relieving cold and flu symptoms, alleviating pain, and regarding use in liver transplant recovery are material, and they significantly deceive Defendant's consumers and provide an unfair competitive advantage by misleading consumers in regard to claimed attributes of Lakewood Juice Products.

**b.     Defendant Falsely Advertises the Benefits of Minerals and Desirable Nutrients that Do Not Exist in the Products.**

35.     Health conscious consumers increasingly are interested in the nutritional qualities and health benefits provided by products they consume. Defendant has taken advantage of this trend by falsely advertising the health benefits of nutrients that do not even exist in the advertised products. Defendant's advertising statements therefore are likely to mislead and deceive consumers.

36.     For example, Defendant falsely advertises Lakewood's 12.5 oz. "Organic Lime, PURE" juice on the Lakewood website, stating: "Natural Source Minerals" and "Help Restore Vital Body Electrolytes."



The Nutrition Facts Panel, however, lists no minerals and no electrolytes.



Defendant's advertising statement is material and is literally false.

> **c.** **Defendant Falsely Advertises Health Benefits Despite Publicly Available Reviews by Independent Expert Bodies Specifically Concluding the Underling Data Do Not Support the Claimed Benefit.**

37.     While FDA does not review and authorize structure/function claims, both FDA and the FTC require structure/function claims to be supported by competent and reliable scientific evidence.  The Europeans have a different regulatory structure and prohibit health-related messages on beverages unless the claim has been reviewed and found to be substantiated by the underlying data.  The European Food Safety Authority (EFSA) has reviewed the underlying data on numerous beverages and issued publicly available opinions on those claims that can be substantiated.  Yet Defendant makes multiple claims for their beverage products that have been reviewed, and found to be lacking in substantiation by EFSA.

38.     EFSA evaluated the data on pomegranate juice and determined "a cause and effect relationship has not been established between the consumption of punicalagin/ellagic acid in pomegranate/pomegranate juice and the maintenance of normal blood cholesterol

concentrations." *See* EFSA Journal 2010;8(10):1750. Without such a relationship, Defendant cannot substantiate the claim, "maintain . . . normal cholesterol levels" on its  website for its 32 oz. "Organic Pomegranate, PURE," 32 oz. "Organic Pomegranate with Blueberry," and 32 oz. "Organic Pomegranate with Cranberry."

39.     EFSA also reviewed the data on beet and pineapple juice and digestive support and concluded, "a cause and effect relationship has not been established between the consumption of [pineapple juice] . . . and the claimed effects." *See* EFSA Journal 2011;9(6):2248.  Without such a relationship, there is no support for the website claim that the 32 oz. "Premium Pineapple, PURE" juice helps "Support the Digestive System," or the product label claim that the 32 oz. "Organic Beet, PURE" juice helps "Support the Digestive System."

40.     In addition, EFSA reviewed the underlying data between the consumption of tomato juice and blood glucose levels.  *See* EFSA Journal 2011;9(6):2243.  After reviewing the data, EFSA reported:  "[t]he Panel concludes that a cause and effect relationship cannot be established between the consumption of tomato juice and the claimed effect considered in this section [blood glucose control]."  Defendant, however, positions its "Organic Super Tomato" on the website as helping "Maintain Normal Glucose Levels."

41.     EFSA also evaluated the data underlying the effect of prune juice on normal bowel function.  EFSA offered the following assessment of the data:

> Three papers (Lucas et al, 2004; Tinker et al., 1991; Piirainen *et al.*, 2007) reported on human intervention studies of the effects of prune preparations (dried prunes and a mixture of plum juice concentrate, prune puree and water sweetened with fructose (7 %)) on bowel function in healthy individuals or individuals with mild gastrointestinal symptoms or hypercholesterolaemia.  Prune juice was used in none of the three intervention studies. The Panel considers that no conclusions can be drawn from these references for the scientific substantiation of the claimed effect. Overall, no evidence was provided on prune juice for the scientific substantiation of the claimed effect. Three human intervention studies

> cited used interventions other than prune juice, and the other references provided only various, general background information and did not provide data that could be used for the scientific substantiation of the claimed effect. The Panel concludes that a cause and effect relationship has not been established between the consumption of prune juice and maintenance of normal bowel function.

Consistent with Defendant's pattern and practice of making unsubstantiated claims, the Lakewood "Organic Prune PURE" product is positioned on the Lakewood website with the claims that it will "Support the Digestive System" and "Promote Bowel Regularity," statements specifically reviewed and found by EFSA to be lacking in substantiation.

### d.   Defendant Misrepresents the Contribution of its Juices to Meeting the USDA Recommendations for Fruit and Vegetable Servings.

42.   The Lakewood website for most of the 32 ounce fruit juices bears the claim, "Eight 4oz Fruit Servings in Every Bottle.  USDA Recommends Consuming 16oz. of Fruits per Day Based on a 2000 Calorie Diet."  The Lakewood Juice Product labels, for most of the 32 ounce juices, bear the claim "8 Fruit Servings in Every Bottle. USDA Recommends Nine 4oz. Servings of Fruit/Vegetables per Day Based on a 2000 calorie Diet."  This statement, however, fails to disclose the accurate USDA recommendations for fruit juice.    USDA offers the following recommendation on fruit juice:  "Although fruit juice can be part of healthy eating patterns, it is lower than whole fruit in dietary fiber and when consumed in excess can contribute extra calories. Therefore, at least half of the recommended amount of fruits should come from whole fruits."  *See*  https://health.gov/dietaryguidelines/2015/guidelines/chapter-1/a-closer-look-inside-healthy-eating-patterns.

43.   The Lakewood website misleadingly represents the role of fruit juice in meeting dietary guidelines by claiming each 32 ounce bottle of fruit juice contributes eight fruit servings. The statement conveys a consumer can achieve eight fruit/vegetable servings per day by merely

drinking the full 32 ounce bottle of juice.  By failing to disclose the material fact that the Dietary Guidelines specifically state that only half of the recommended fruit intake may come from fruit juice, Lakewood is misrepresenting the role that its fruit juices can play in meeting the dietary guidelines.

> e.  **Defendant Blatantly Disregards and Misuses Established Nutrient Content Claims to Misrepresent the Levels of Vitamins and Minerals in Various Products.**

44.  The term "Provides" has a defined, precise meaning within the beverage labeling and advertising context. Beverage labels must not use the term "Provides" when characterizing the level of a nutrient in the product unless that beverage  "contains 10 to 19 percent of the Reference Daily Intake ("RDI") or the Daily Reference Value ("DRV") per reference amount customarily consumed." 21 C.F.R. § 101.54(c).  FTC, which regulates beverage advertising, has issued an Enforcement Policy Statement on Food Advertising explaining that "the use in advertising of FDA-defined terms in a manner inconsistent with FDA's definition is likely to mislead consumers."  FTC Enforcement Policy on Food Advertising, May 13, 1994, *available at* https://www.ftc.gov/public-statements/1994/05/enforcement-policy-statement-food-advertising.

45.  Any beverage labeled or advertised as "Providing" a particular nutrient when the product does not contain the amount determined by the FDA to provide a meaningful amount of that nutrient therefore is labeled or advertised in a false and misleading way.

46.  The term "Enriched" has a defined, precise meaning within the beverage advertising context. Beverage labels must not include the term "Enriched" unless the beverage contains "at least 10 percent more of the RDI for vitamins or minerals or of the DRV for protein, dietary fiber, or potassium (expressed as a percent of the Daily Value) per reference amount customarily consumed than an appropriate reference food," among other criteria. 21 C.F.R. §

101.54(e). Furthermore, "[t]he identity of the reference food and the percentage (or fraction) that the nutrient is greater relative to the RDI or DRV [must be] declared in immediate proximity to the most prominent such claim (e.g., 'contains 10 percent more of the Daily Value for fiber than white bread.')." *Id.*  As explained above, the FTC defers to FDA's nutrient content claim definitions.  Any "Enriched" claim in beverage labeling or advertising that does not meet the minimum requirements to make that claim therefore is false and misleading.

47.  Defendant ignores these well-established definitions for nutrient content claims and misleadingly represents its products have material levels of vitamins, minerals, and electrolytes when a review of the nutrition information identifies either insignificant levels of these nutrients or no nutrients at all.  For example, Defendant falsely advertises Lakewood's 32 oz. "Organic Apple, PURE" juice on the Lakewood website and product label, stating: "Apple Juice Provides Essential Micro-Nutrients, Vitamins, Minerals & Fiber." This product, however, does not provide a good source of any vitamins or minerals. The product contains only 1g of dietary fiber, or 4% (not 10-19%) of the Daily Value and does not qualify for the regulatory criteria established by FDA for using the nutrient content claim, "provides."

48.  Defendant falsely advertises Lakewood's 32 oz. "Organic Concord Grape, PURE" juice on the Lakewood website and product label, stating: "Powerful Concord Grapes Provide Essential Micro-Nutrients, Vitamins & Minerals." This product, however, contains no vitamin present at 10-19% of the Daily Value.

49.  Defendant falsely advertises Lakewood's 32 oz. "Organic Tart Cherry, PURE" juice on the Lakewood website and product label, stating: "Tart Cherry Juice Provides Essential Micro-Nutrients, Vitamins, & Minerals." This product, however, contains only one nutrient at

10-19% of the Daily Value (vitamin A, at 30% of the Daily Value). This product contains no minerals at 10-19% of the Daily Value.

50.     Defendant falsely advertises Lakewood's 32 oz. "Organic Lemonade" juice on the Lakewood website, stating: "Natural Fruit juices Provide Essential Micro-Nutrients, Vitamins & Minerals." This product, however, contains only one nutrient at 10-19% of the Daily Value (vitamin C, at 10% of the Daily Value). This product contains no minerals at 10-19% of the Daily Value.

51.     Defendant falsely advertises Lakewood's "Super Tomato" juice on the Lakewood® Organic Cold Pressed Facebook page, by claiming—next to an image of "Super Tomato" juice—that one of the "great benefits of drinking Tomato juice" is that it is a "[s]ignificant source of fiber." The "Super Tomato" juice, however, includes only 8% of the Daily Value.



52.     Defendant falsely advertises Lakewood's 32 oz. "Premium Prune, PURE" juice on the Lakewood website, stating: "Calcium & Fiber Enriched." The use of the term "enriched" requires the product to have at least 10% more of the Daily Value for calcium and fiber than an

appropriate reference food.  The product, however, does not contain 10% more of the Daily Value of fiber than the regular, non-premium prune juice. Lakewood's 32 oz. "enriched" "Premium Prune, PURE" juice includes only 4% more of the Daily Value of fiber than its "Organic Prune, PURE" with the "enriched" version reporting 16% of the Daily Value of fiber and the regular prune juice reporting 12% of the Daily Value of fiber.



### f.    Defendant Makes False and Misleading Claims Regarding the Ability of Juices to Improve Iron Absorption.

53.    Several of the Lakewood Juice Products bear the claim on the Lakewood website that the product will improve iron absorption.  The National Institutes of Health ("NIH") has reviewed the underlying studies on iron absorption and various foods and recognized that the vitamin C in orange juice can enhance iron absorption.  NIH also has recognized, however, "the effects of enhancers and inhibitors of iron absorption are attenuated by a typical mixed western diet, so they have little effect on most people's iron status."  *See* Iron, Dietary Supplement Fact Sheet (accessed Oct. 6, 2016 at https://ods.od.nih.gov/factsheets/Iron-HealthProfessional).  Upon

information and belief, there are no data supporting constituents in juices other than Vitamin C as increasing iron absorption.

54.     Despite the NIH recognition that substances designed to enhance iron absorption have little effect on most people's iron status, Defendant positions several products on its website and product labels for their ability to improve iron absorption, including the 32 ounce "Organic Pure Blueberry" (10% DV Vitamin C), and the 32 ounce "Organic Acai Amazon Berry" (25% Vitamin C).  Moreover, neither of these products contains vitamin C levels that are even remotely similar to the 140% DV reported in a serving of Defendant's Organic Orange Pure juice product.  Simply, Defendant cannot substantiate the claim that these juice products will improve iron absorption.

> **g.     Defendant Makes False or Misleading Statements by Claiming Juice Products Will Help "Maintain Normal Cholesterol" When the Products Fail to Contain a Level of Fiber Recognized by FDA as Reducing the Risk of Heart Disease.**

55.     FDA has specifically reviewed the data on the benefits of fruit products (as well as vegetables and grain products) and issued a health claim regulation that allows certain products to bear a claim regarding a reduced risk of coronary heart disease when the product (1) is or contains a fruit, vegetable, or grain product, (2) is low in saturated fat, low in cholesterol, and low in total fat, (3) contains without fortification 0.6g of soluble fiber per reference amount.  21 C.F.R. 101.77(c)(1)(ii).  Defendant makes false or misleading statements by claiming on the Lakewood website and Lakewood Juice Products labels that products with 0g fiber will help "maintain normal cholesterol."  Upon information and belief, there is no evidence that any nutrient or naturally occurring constituent in the Lakewood Juice Products other than fiber has been demonstrated by competent and reliable scientific evidence to maintain normal cholesterol levels.

56.    Defendant, however, falsely or misleadingly advertises that the 32 oz. "Premium Cranberry, PURE" and 32 oz. "Premium Cranberry Blend" help to "maintain normal cholesterol," though these juice products declare 0g of fiber.

**h.    Defendant Makes False or Misleading Statements by Claiming that Juice Products with Little or No Vitamin A Will Help "Keep Eyes and Skin Healthy."**

57.    USDA recognizes that the vitamin A in vegetables can keep eyes and skin healthy.  *See*  https://www.choosemyplate.gov/vegetables-nutrients-health.   Upon information and belief, there is no evidence that very low levels of Vitamin A or other nutrients or constituents in certain Lakewood Juice Products are associated with eye and skin health.

58.    Defendant makes false or misleading statements by claiming on the Lakewood website and Lakewood Juice Products labels that products with little to no vitamin A help "keep eyes and skin healthy."  Defendant falsely or misleadingly advertises on the Lakewood website that the 32 oz. "Organic Apple, PURE" juice will help "keep skin healthy," though the product contains no vitamin A.

59.    Defendant also falsely or misleadingly advertises on its website and/or product labels that the following products help "Keep Eyes and Skin Healthy" or "Promote Normal Cell Growth and Healthy Skin," oftentimes citing the USDA, though each of these products contains only 2% of the Daily Value of vitamin A: 32 oz. "Organic Cranberry, PURE"; 32 oz. "Organic Beet, PURE"; 32 oz. "Organic Pineapple Coconut (Pina Colada)"; 32 oz. "Organic Pomegranate with Cranberry"; 32 oz. "Premium Cranberry Blend"; and 32 oz. "Premium Cranberry, PURE." The very low level of Vitamin A in these products is insufficient to impart any benefit on eye or skin health.  The citation to USDA misleadingly conveys that USDA has found purported benefit

to these products when, in fact, the agency has not made such a determination with regard to any of these specific juices.

> i.    **Defendant Makes False or Misleading Statements by Claiming that Lakewood Juice Products that Include Significant Levels of Sugar Will Help "Maintain Normal Glucose Levels."**

60.    Defendant makes false or misleading statements by claiming on the Lakewood website and Lakewood Juice Products labels that products with significant sugar content nevertheless help "maintain normal glucose levels."

61.    According to a report issued by Harvard Health Publications, juices such as apple juice and orange juice have a glycemic index of 44 and 50, respectfully (for purposes of comparison a carbonated cola has an index of 63).  *See Glycemic Index and Glycemic Load for 100+ Foods*, Harvard Health Publications, Harvard Medical School (accessed Oct. 6, 2016 at http://www.health.harvard.edu/diseases-and-conditions/glycemic_index_and_glycemic_load_for_100_foods).    The glycemic index is a measure that is designed to evaluate how a food or beverage impacts blood sugar levels on a scale of 0 to 100 (with "0" being no impact and pure sugar being "100").

62.    Juices contain naturally occurring sugars, and the sugars in the juice can be expected to have an impact on blood sugar levels, particularly given the glycemic index that has been reported for commonly consumed fruit juices.  Defendant falsely or misleadingly advertises on the Lakewood website that the 32 oz. "Organic Pomegranate, PURE" juice will "maintain normal glucose levels (National Institute of Health)" though the nutrition facts indicate the product contains 33g of sugars.  Upon information and belief, there is no substantiation for the suggestion that these products will help maintain normal glucose levels. Additionally, Defendant's reference to NIH is intended further to mislead consumers into believing that NIH

endorses the claimed benefit.  Upon information and belief, a review of the NIH website fails to identify any statement where NIH specifically recommends pomegranate juice (or any juice) for maintaining normal glucose levels.

63. Defendant falsely or misleadingly advertises that other products with significant sugar levels will maintain normal glucose levels, including the 32 oz. "Organic Black Cherry Blend" (28g sugars); 32 oz. "Organic Acai Amazon Berry" (22g of sugars); 32 oz. "Organic Papaya" (22g of sugars): 32 oz. "Organic Pineapple Coconut (Pina Colada)" (24g of sugars); 32 oz. "Organic Pomegranate with Blueberry" (27g of sugars); and 32 oz. "Organic Pomegranate with Cranberry" (24g of sugars).  Given the sugar level in these products and the reported Glycemic Index of juices, Defendant misleadingly represents these products will maintain normal blood glucose levels when the level of sugar in these products is expected to have an impact on blood glucose levels.

> **j.** **Defendant Makes False or Misleading Statements by Claiming Juice Products Will Help "Maintain Healthy Blood Pressure" When the Products Contain Insufficient Potassium.**

64. FDA has recognized that diets rich in potassium can reduce the risk of high blood pressure and stroke.  FDA Health Claim Notification for Potassium Containing Foods, Oct. 31, 2000, http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm073606.htm.  To qualify for the claim, products must be (1) low in sodium and (2) provide a good source of potassium, which is defined as 350mg of potassium per 8 fluid ounces.  Upon information and belief, a similar level of sodium and potassium is required to substantiate a claim that a product maintains a healthy blood pressure.

65.     Defendant makes false or misleading statements by claiming on the Lakewood website and Lakewood Juice Products labels that products, which do not include at least 350mg of potassium per 8 fluid oz., help "maintain healthy blood pressure." These statements appear on numerous Lakewood Juice Products, including: 32 oz. "Organic Apple, PURE"; 32 oz. "Organic Blueberry, PURE"; 32 oz. "Organic Concord Grape, PURE"; 32 oz. "Organic Pineapple, PURE"; 32 oz. "Organic Tart Cherry, PURE"; 32 oz. "Organic Pomegranate with Cranberry"; 32 oz. "Organic Lemonade"; and 32 oz. "Premium Pineapple, PURE."

> **k.     Defendant Makes False or Misleading Statements by Claiming that Lakewood Juice Products Will Help "Support the Immune System" When the Products Contain Little or No Nutrients to Support the Claim.**

66.     NIH has reviewed the underlying studies on various vitamins and offered an assessment of whether the vitamin has been associated with a health benefit.  NIH has conducted such an assessment of vitamin C, a nutrient commonly associated with immune function.  NIH reviewed the studies on vitamin C and concluded "vitamin  C supplements do not reduce the risk of getting the common cold. However, people who take vitamin C supplements regularly might have slightly shorter colds or somewhat milder symptoms when they do have a cold."  *See* https://ods.od.nih.gov/factsheets/VitaminC-Consumer.   Upon information and belief, there is no evidence that any nutrient or constituent in certain Lakewood Juice Products, other than vitamin C, is associated with immune system support at the levels of consumption that are typical for these juice beverages.

67.     Defendant falsely or misleadingly advertises that the 32 oz. "Organic Lime, PURE" juice will "support the immune system," though the label indicates the product contains only 2% of the Daily Value of vitamin C.

68.     Defendant falsely or misleadingly advertises that the 32 oz. "Organic Apple, PURE" juice will "help . . . support the immune system," though the label indicates the product contains only 6% of the Daily Value of vitamin C.

**l.     Defendant Makes False or Misleading Statements by Claiming Lakewood Juice Products Will Help "Support the Digestive System" When there is No Support for the Claim.**

69.     USDA recognizes many health benefits associated with dietary fiber including a reduction in digestive complaints and an increase in satiety. http://www.cnpp.usda.gov/sites/default/files/nutrient_content_of_the_us_food_supply/FiberFactSheet.pdf.   On information and belief, there are no other nutrients in Lakewood Juice Products other than fiber that would have a beneficial effect on the digestive system.   Defendant makes false or misleading statements by claiming on the Lakewood website and Lakewood Juice Products labels that products which contain only 0g – 1g of fiber nevertheless help "support the digestive system."

70.     Defendant falsely or misleadingly advertises that the 32 oz. "Organic Black Cherry Blend"; 32 oz. "Premium Cranberry Blend"; 32 oz. "Organic Lemonade"; and 32 oz. "Organic Tart Cherry, PURE" juices will "help . . . support the digestive system," although the labels indicate the products do not contain any fiber.

71.     Defendant falsely or misleadingly advertises that the 32 oz. "Organic Blueberry, PURE"; 32 oz. "Organic Pomegranate with Blueberry"; 32 oz. "Premium Pomegranate, PURE"; 32 oz. "Organic Cranberry Blend"; and 32 oz. "Organic Pineapple, PURE" juices will "support the digestive system," although the labels indicate the products contain only 1g of fiber each. Defendant also falsely or misleadingly advertises that the 12.5 oz. "Organic Cranberry

Concentrate" "helps support digestion for overall well-being and vitality," although the product contains only 1g of fiber.

> **m.  Defendant Makes Misleading and Illegal Disease Claims on the Lakewood Website by Offering Results with Links to Lakewood Juice Products when Customers Search for Health Terms.**

72.  Defendant's conduct and design of its website demonstrates a knowing and willful disregard of the regulatory requirements and intent to position products specifically for use in treating and preventing various disease states, claims that are prohibited on beverage products.  The intent is evidenced by hidden metatags that allow consumers to search specific disease terms and then direct those consumers to the juice that Lakewood represents as being designed to be of assistance for individuals with that particular disease or health related condition.

73.  The Lakewood website includes a search bar, in which consumers and potential consumers can search for key terms, such as "fruit," "organic," "skin," "tissue damage," "joint pain," "gout," "heart attack," "infection," and "disease." After a website visitor searches for a term, the Lakewood website displays results. Either the phrase "0 links found for '[search term]'" appears, or links to Lakewood Juice Products are provided. True and correct copies of printouts from the Lakewood website showing the search function are attached hereto as Exhibit D.

74.  When the website visitor searches the term "gout," the Lakewood website results page reads: "2 links found for 'gout,'" under which appear links to "Organic Tart Cherry Blend" and "Organic Black Cherry, PURE."



75.     When the website visitor searches the term "heart attack," the Lakewood website results page reads: "26 links found for 'heart attack,'" under which appear links to numerous Lakewood Juice Products, including but not limited to: "Organic Fruit & Garden Purple Harmony"; "Organic Fruit & Garden Blue Balance"; "Organic Apple, PURE"; "Organic Pomegranate with Blueberry"; and "Organic Papaya."



76.     When the website visitor searches the term "infection," the Lakewood website results page reads: "4 links found for 'infection,'" under which appear links to "Organic Cranberry, PURE"; "Organic Blueberry, PURE"; and "Organic Cranberry Blend."

77.     When the website visitor searches the term "disease," the Lakewood website results page reads: "24 links found for 'disease,'" under which appear links to numerous Lakewood Juice Products, including but not limited to: "Organic Pink Grapefruit, PURE"; "Organic Prune, PURE"; and "Organic Mango Blend."

78.     When the website visitor searches the term "tissue damage," the Lakewood website results page reads: "8 links found for 'tissue damage,'" under which appear links to numerous Lakewood Juice Products, including but not limited to: "Organic Purple Carrot, PURE"; "Organic Blueberry, PURE"; and "Organic Pineapple Coconut (Pina Colada)."

79.     When the website visitor searches the term "joint pain," the Lakewood website results page reads: "7 links found for 'joint pain,'" under which appear links to numerous Lakewood Juice Products, including but not limited to: "Organic Tart Cherry Blend"; "Organic Aloe PURE – Whole Leaf Juice"; and "Organic Black Cherry, PURE."

80.     Defendant's search results, including but not limited to those that appear when the website visitor searches the terms "tissue damage," "joint pain," "gout," "heart attack," "infection," and "disease," function as misleading advertising claims because these claims are regulated by FDA as disease claims that lawfully may not be used in the promotion of beverages. In addition, the search results misleadingly imply that the linked-to Lakewood Juice Products might provide health benefits in relation to the searched-for term, when in fact, on information and belief there is no valid scientific evidence to show that the products help address the conditions identified.

**n.** **Defendant Makes Misleading Statements by Advertising on the Lakewood Website that a Study Shows Drinking Apple Juice Reduces the Risk of Heart Disease.**

81.     Defendant includes on the Lakewood website a section entitled "Did You Know?" which provides information about health benefits claimed to be associated with particular fruits and vegetables. The "Did You Know?" page includes links to multiple sections, one of which is entitled "Drinking apple juice is credited with many health benefits." True and correct copies of printouts of the Lakewood website showing the "Did You Know?" content are attached hereto as Exhibit E.

82.     If a viewer clicks on the link to read more, a summary appears which includes the following establishment claim: "According to a study published in the winter edition of the Journal of Medicinal Food carried out by the University of California-Davis School of Medicine, **drinking apple juice every day significantly reduces the risk of heart disease.** (Phytonutrients found in apples act as natural antioxidants, helping to slow the oxidation process and the build-up of plaque, which can lead to coronary problems.) These phytonutrients have also been found to be associated with reducing the risk of certain types of health issues. For more information visit: http://www.ucdmc.ucdavis.edu/medschool/" followed by "Lakewood Organic Pure Apple Juice" and "The Juice From Over 3 Lbs. of Fresh Apples in Every Bottle." *See Drinking Apple Juice Is Credited with Many Health Benefits*, LAKEWOOD® FRESH PRESSED®, www.lakewoodjuices.com/did_you_know#top (last visited Sept. 13, 2016) (emphasis original).

83.     The UC Davis School of Medicine study cited in this establishment claim is not sufficient to support the suggestion that the Lakewood Organic Pure Apple Juice provides the advertised benefit, and therefore the establishment claim is literally false as applied to this product.   While the research showed consumption of apples and apple juice may have a

beneficial impact on a marker for heart disease, the researchers did not conclude the study showed apple juice would "significantly reduce[] the risk of heart disease." Defendant therefore deceives consumers by marketing the literally false statement, "[A]ccording to a study . . . drinking apple *juice* every day *significantly* reduces the risk of heart disease."

84. Moreover, FDA regulates claims regarding the link between a beverage and reduced risk of disease as "health claims" and they only may be used subject to FDA authorization through a regulation (*see* 21 C.F.R. § 101.14) or through the exercise of enforcement discretion for qualified health claims (See, http://www.fda.gov/RegulatoryInformation/Guidances/ucm053843.htm). Defendant is circumventing the regulatory process, making an unlawful claim that has not been authorized by FDA, and misleading consumers into thinking the apple juice has been shown significantly to reduce the risk of heart disease when in fact FDA has never reached such a determination.

**D.  Defendant's Willful Misconduct**

85. In view of Defendant's campaign of deception and in the interest of calling a halt to Defendant's unlawful activity, Smucker, through counsel, sent a letter dated May 16, 2016, to Thomas Fuhrman, Defendant's Chief Executive Officer, describing the significant concerns raised by Defendant's labeling and advertising practices for Lakewood Juice Products. A true and correct copy of the May 16, 2016 letter is attached hereto as Exhibit F.

86. Smucker raised the issue of Defendant's labeling and advertising that features claims that constitute unapproved disease claims, unlawful nutrient content claims, and claims that are otherwise false and misleading under federal and state consumer protection laws.

87. Smucker's letter included specific examples of Defendant's false or misleading claims, including, but not limited to: (1) disease claims such as "Maintain Healthy Levels of Uric

Acid (contributor of Gout)" and "Improve . . . Resistance to Infection"; (2) nutrient content claims such as "Provides Essential Micro-Nutrients, Vitamins & Minerals"; and (3) other health claims such as "Support the Immune System" and "Maintain Normal Glucose" (sometimes citing USDA MyPlate or National Institutes of Health).

88.    The letter also raised the issue of Defendant's claims that mislead consumers by mischaracterizing the USDA's current guidance regarding how many servings of fruit individuals should consume per day. The claim exposes the entire juice industry, including Knudsen, to criticism from those critical of the role of fruit juice in meeting dietary recommendations.

89.    Mr. Fuhrman sent a response letter dated May 26, 2016.  In his response, Mr. Fuhrman asserted: "The term 'Provides' is sometimes used in our labels as an action verb to describe the role of nutrients such as vitamins and minerals in affecting or maintaining normal body structure or general well-being. Nevertheless, we understand that the FDA regulation . . . identifies the word 'Provides' as a synonym for 'good source' and that when this word is used, the beverage must contain at least 10 percent of the reference daily intake (RDI) or daily reference value (DRV) per amount customarily consumed. For this reason, we will take corrective action to remove the word 'Provides' from our labels when used as an action verb." A true and correct copy of Mr. Fuhrman's May 26, 2016 response letter is attached hereto as Exhibit G.

90.    As described above, Defendant continues misleadingly to use the term "Provides" on the Lakewood website and product labels to describe Lakewood Juice Products as providing a good source of nutrients, when the Lakewood Juice Products do not contain at least 10 percent of the RDI or DRV.

91.     Mr. Fuhrman's May 26, 2016 response letter also asserted: "We review our product labels on a regular basis and have already addressed many of the concerns described in your notification. For example, Lakewood Organic Pure Lime and Lakewood Organic Pure Lemon labels do not make any claims regarding nutrients or minerals; instead, the products now feature a delicious recipe."  *See* Exhibit G.

92.     The Lakewood website still lists "Essential Micro-Nutrients" and "Natural Source Minerals" as claims for "Organic Lime, PURE."

93.     Accordingly, Defendant has demonstrated that despite being placed on notice of these false and misleading advertising and labeling practices, among others, it has chosen willfully to continue its campaign of deception.

## FIRST CLAIM FOR RELIEF

(False Advertising under 15 U.S.C. § 1125(a))

94.     Knudsen re-alleges and incorporates by reference the allegations of paragraphs 1 through 93 above as though fully set forth herein.

95.     The Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits the use in commercial advertising or promotion of "any word, term, name, symbol or device, or any combination thereof, of any . . . false or misleading description of fact, or false or misleading representation of fact" which "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activity." The Lanham Act authorizes "any person who believes that he or she is or is likely to be damaged by" a violation of the Act to file a civil action for relief. 15 U.S.C. § 1125(a)(1).

96.     The Lanham Act authorizes relief including injunctive relief, disgorgement of profits, trebled damages, court costs, legal fees, pre-judgment interest, and post-judgment interest. *See* 15 U.S.C. §§ 1116(a), 1117(a)(1)-(3).

97.     Defendant uses commercial advertising in this District that contain false and misleading statements of fact regarding Lakewood Juice Products, which misrepresent the nature, characteristics, and qualities of the products.

98.     These advertisements contain literally false statements and/or misleading statements or failures to disclose, including but not limited to those described above.

99.     These statements exemplify the numerous literally false and/or misleading statements or failures to disclose that Defendant advertises in relation to over one hundred Lakewood Juice Products.

100.    These statements are material. They actually deceive or have a tendency to deceive a substantial segment of Defendant's consumers and Knudsen's existing or potential consumers. This deception is material because it concerns the nature, inherent quality, or characteristic of Defendant's product and is likely to influence the purchasing decisions of Defendant's consumers and improperly induce sales.

101.    Defendant's false and misleading advertising statements and omissions injure both consumers and Knudsen.

102.    Defendant's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

103.    Defendant has caused, and will continue to cause, immediate and irreparable injury to Knudsen, including injury to Knudsen's business, reputation, and goodwill, for which there is no adequate remedy at law. Knudsen therefore seeks and is entitled to injunctive relief

under 15 U.S.C. § 1116 restraining Defendant, its agents, employees, representatives, and all persons acting in concert with Defendant from engaging in future acts of false or misleading advertising and ordering removal of all of Defendant's false or misleading advertising statements from Lakewood's website, product labels and promotional materials containing the statements.

104.   Knudsen also is entitled to recover from Defendant the damages Knudsen has sustained as a result of Defendant's acts in violation of 15 U.S.C. § 1125(a), pursuant to 15 U.S.C. § 1117. At present, Knudsen is unable fully to ascertain the extent of the monetary damages it has sustained as a result of Defendant's acts.

105.   Knudsen additionally is entitled to recover from Defendant the gains, profits, and advantages that Defendant obtained as a result of Defendant's acts in violation of 15 U.S.C. § 1125(a), pursuant to 15 U.S.C. § 1117.  At present, Knudsen is unable fully to ascertain the extent of the monetary damages it has sustained as a result of Defendant's acts.

106.   Knudsen further is entitled to recover the costs of this action, pursuant to 15 U.S.C. § 1117. Defendant's conduct is willful and deliberate and intentionally causes confusion, mistake, or deception. Defendant's willful conduct makes this an exceptional case, entitling Knudsen to recover additional damages and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Deceptive Trade Practices under Ohio Rev. Code Ch. 4165)

107.   Knudsen re-alleges and incorporates by reference the allegations of paragraphs 1 through 106 above as though fully set forth herein.

108.   Defendant has, through its false and misleading advertising statements described above,  used deceptive representations in connection with its goods in violation of Ohio Rev. Code § 4165.02(A)(7).

109.    Knudsen has been irreparably injured, and is likely to continue to be irreparably injured, by Defendant's actions in violation of Ohio Rev. Code § 4165.02(A).

110.    Defendant has caused, and will continue to cause, immediate and irreparable injury to Knudsen, including injury to Knudsen's business, reputation, and goodwill, for which there is no adequate remedy at law. Knudsen therefore seeks and is entitled to an injunction under Ohio Rev. Code § 4165.03(A)(1) restraining Defendant, its agents, employees, representatives, and all persons acting in concert with Defendant from engaging in future acts of false or misleading advertising and ordering removal of all of Defendant's false or misleading advertisements.

111.    Knudsen also is entitled to recover from Defendant the damages sustained by Knudsen as a result of Defendant's acts in violation of Ohio Rev. Code § 4165.02(A). At present, Knudsen is unable fully to ascertain the extent of the monetary damages it has sustained as a result of Defendant's acts.

112.    Knudsen additionally is entitled to recover its reasonable attorneys' fees in connection with this action, under Ohio Rev. Code § 4165.03(B). Defendant's conduct was willful and deliberate, and Defendant intentionally caused confusion, mistake, or deception. Defendant's willful conduct makes this an exceptional case, entitling Knudsen to recover additional damages and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

### (Ohio Common Law Deceptive Trade Practices)

113.    Knudsen re-alleges and incorporates by reference the allegations of paragraphs 1 through 112 above as though fully set forth herein.

114.    Defendant has, through its false and misleading advertising statements, made deceptive representations and omissions in connection with its goods, intending for consumers to rely on those misrepresentations and purchase the Juice Products from Defendant.

115.    Defendant has implemented a campaign of deception which features false and misleading advertising statements designed to mislead and deceive consumers and to steal market share from Knudsen and other competitors.

116.    Knudsen's parent company communicated with Defendant and demanded that Defendant halt its false and misleading advertising practices, but Defendant's conduct has continued unabated.

117.    Defendant's deceptive statements and omissions have harmed and continue to harm Knudsen, without just cause or excuse.

118.    Defendant has unjustifiably benefited from these unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Knudsen prays for judgment against Defendant Florida Bottling, Inc. as follows:

119.    For preliminary and permanent injunctive relief prohibiting Defendant, its agents, employees, representatives, and all persons acting in concert with or on behalf of Defendant from engaging in false or misleading advertising with respect to Lakewood Juice Products, and/or violating Section 43(a) of the Lanham Act and/or violating the Ohio Deceptive Trade Practices Act and/or violating Ohio common law, which relief includes but is not limited to removal of all false or misleading advertisements and corrective advertising to remedy the effects of Defendant's false advertising;

120.    That Defendant be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Knudsen through the use of false, deceptive, or misleading statements of fact that misrepresent the nature, quality, and characteristics of Lakewood Juice Products;

121.    That Defendant be adjudged to have violated Ohio Rev. Code § 4165 by engaging in deceptive trade practices through the use of deceptive representations in connection with its goods, thereby injuring Knudsen;

122.    That Defendant be adjudged to have engaged in unfair competition under Ohio common law;

123.    That Defendant's conduct be adjudged to have been wanton, reckless, malicious and oppressive;

124.    That this proceeding be adjudged to be an exceptional case pursuant to 15 U.S.C. §1117(a);

125.    For an Order requiring Defendant to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Lakewood Juice Products, including without limitation the placement of corrective advertising and the provision of  written notice to the public that the advertised products to not have the characteristics attributed to them in the false or misleading advertisements;

126.    That Knudsen be awarded damages Knudsen sustained as a result of Defendant's misconduct;

127.    That Defendant be required to account for and disgorge its profits wrongfully obtained as a result of the misconduct described herein;

128.    That Knudsen recover its costs and attorney fees;

129.    That Knudsen be awarded exemplary damages for Defendant's willful misconduct;

130.    That all of Defendant's false, misleading, and deceptive advertising materials be removed and destroyed pursuant to 15 U.S.C. § 1118.

131.    That Knudsen be granted prejudgment and post-judgment interest; and

132.    That Knudsen receives such other and further relief as the Court deems just and proper.

Dated: October 13, 2016                              Respectfully submitted,

                                                     *s/ Fritz E. Berckmueller*
                                                     FRITZ E. BERCKMUELLER (0081530)
                                                     ALEXANDER B. REICH (0084869)
                                                     CALFEE, HALTER & GRISWOLD LLP
                                                     The Calfee Building
                                                     1405 East Sixth Street
                                                     Cleveland, OH 44114-1607
                                                     (216) 622-8200 (Phone)
                                                     (216) 241-0816 (Fax)
                                                     fberckmueller@calfee.com
                                                     areich@calfee.com

                                                     Attorneys for Plaintiff, Knudsen & Sons, Inc.


OF COUNSEL:

Steven P. Hollman (*pro hac vice* application filed contemporaneously with Verified Complaint)
Elizabeth Hagerty (*pro hac vice* application filed contemporaneously with Verified Complaint)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5600 (Phone)
(202) 637-5910 (Fax)
steven.hollman@hoganlovells.com
elizabeth.hagerty@hoganlovells.com

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury as to all claims in this proceeding triable of right to a jury.

Respectfully submitted**,**

*s/ Fritz E. Berckmueller*

FRITZ E. BERCKMUELLER (0081530)
ALEXANDER B. REICH (0084869)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114-1607
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
fberckmueller@calfee.com
areich@calfee.com

Attorneys for Plaintiff, Knudsen & Sons, Inc.

OF COUNSEL:

Steven P. Hollman (*pro hac vice* application filed contemporaneously with Verified Complaint)
Elizabeth Hagerty (*pro hac vice* application filed contemporaneously with Verified Complaint)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5600 (Phone)
(202) 637-5910 (Fax)
steven.hollman@hoganlovells.com
elizabeth.hagerty@hoganlovells.com

**VERIFICATION**

The undersigned hereby states and alleges that the facts set forth in the accompanying Verified Complaint for False Advertising Under the Lanham Act and Deceptive Trade Practices Under the Ohio Trade Practices Act and Ohio Common Law are based true and correct based on information provided by employees and representatives of Knudsen & Sons, Inc., the books and records of Knudsen & Sons, Inc., publicly available information, and where applicable, the personal knowledge of the undersigned.

I hereby verify under the penalties of perjury under the laws of the United States of America that the facts set forth herein are true and correct.

Executed this 12th day of October, 2016.


_____
SUSAN A. CORFMAN